UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RANDY A. BECKER, )<br>)<br>         Plaintiff   )<br>)<br>    vs.             )<br>)<br>INDIANA STATE PRISON/INDIANA )<br>DEPARTMENT OF CORRECTION,    )<br>et al.,                     )<br>)<br>         Defendants  ) | CAUSE NO. 3:04-CV-543 RM |

OPINION and ORDER

Randy Becker brings his claims pursuant to 42 U.S.C. § 1983, alleging that in 2002 while he was housed at the Indiana State Prison ("ISP") in Michigan City, Indiana, defendants Marion Thatcher and Cecil Davis failed to protect him from an attack by other inmates. Marion Thatcher was a case manager and Cecil Davis was Superintendent at ISP.[1]

This cause is now before the court on the defendants' motion for summary judgment on Mr. Becker's claims against them. The defendants argue that Mr. Becker's claims are barred because he failed to exhaust his administrative remedies; his claim for injunctive relief is moot because he's no longer confined at ISP; he can't prevail on his claims against ISP and the Indiana Department of Correction or on his official capacity claims against Marion Thatcher and Cecil

---

[1] Even though Cecil Davis is no longer Superintendent of ISP and is currently employed as the Northern Regional Director of the DOC, Davis Aff., ¶ 3, he will be referred to as Superintendent Davis for purposes of this discussion.

Davis because they are not "persons" within the meaning of 42 U.S.C. § 1983; and defendants Thatcher and Davis were not deliberately indifferent or, alternatively, are entitled to qualified immunity. Mr. Becker has filed his response, and for the reasons that follow, the court grants the defendants' motion.

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); see also Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence

2

it has that would convince a trier of fact to accept its version of events.'" *(quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

Mr. Becker's claims against Mr. Thatcher and Superintendent Davis relate to injuries Mr. Becker suffered while confined in the Administrative Segregation Unit ("ASU") at ISP. Mr. Becker says on September 3, 2002 he sent a request to Mr. Thatcher advising him of a situation he was having with Ralph Page, another inmate housed at ISP, and requesting an interview to discuss concerns Mr. Becker had about his own safety. Mr. Becker says that same day he sent a nearly identically-worded request for an interview to Superintendent Davis. Becker Aff., ¶¶ 2-3.

Mr. Becker met with Mr. Thatcher on September 5 and expressed his fear of being physically assaulted by offender Page. Mr. Becker says, "I made it crystal clear to Mr. Thatcher about my fears about Ralph Page and that I had been threatened and was facing harm and danger from, and that I was afraid of, Ralph Page." Becker Aff., ¶ 4. In response, Mr. Thatcher told Mr. Becker not to worry: because Ralph Page was in a different recreational group, the two men could have no contact with each other. Becker Aff., ¶ 5. Mr. Becker says he told Mr. Thatcher he wasn't satisfied with that answer, especially in light of the two-day delay in a response to his request for an interview. According to Mr. Becker, Mr. Thatcher said he had arranged the meeting after Superintendent Davis contacted him about Mr. Becker's request. Becker Aff., ¶ 5. Mr. Becker maintains Mr. Thatcher confirmed that he was aware of Mr. Page's "assaultive behavior" and assured Mr.

3

Becker that he would inform the officers in charge of Mr. Becker's area about the situation. *Id.* Mr. Becker says Mr. Thatcher then stated he would contact Superintendent Davis and "get the wheels rolling" to move Mr. Becker from that area of the prison. *Id.*

The following day, inmates Ralph Page and Loren-Wayne Tidwell gained access to Mr. Becker's area of the ASU, approached Mr. Becker in the shower area, and stabbed and seriously injured him. Mr. Becker was taken to the hospital at ISP, transferred to a hospital in Michigan City, and transferred again to Wishard Hospital in Indianapolis, where he underwent surgery for his injuries. Following surgery, Mr. Becker was transferred to the Wabash Valley Correctional Facility to recuperate. Mr. Becker reports that he was heavily medicated during his surgery and recovery period. Becker Aff., ¶¶ 8(ii)-(iv).

On October 22, 2002, Mr. Becker submitted a grievance to the ISP grievance specialist relating to his attack and injuries. Becker Aff., ¶ 8(v). Mr. Becker confirms that his Step 1 grievance wasn't timely filed, but he says he had had no access to grievance materials until then, and because he was "in great pain and still suffering from the shock and uncertainty of the situation, [he] was in no condition to even think about filing a grievance, let alone filing a grievance within 48 hours" after the incident, as required by the DOC grievance policy. Becker Aff., ¶¶ 8(iv), 8(v). ISP officials received his grievance on October 25, Becker Aff., Attachment 1, and pursuant to DOC grievance policy were to respond within thirty days.

4

In mid-January 2003, Mr. Becker wrote to DOC Commissioner Ridley-Turner requesting that his grievance be resolved so he could proceed to the next level; he attached a copy of his grievance to that letter. Becker Aff., ¶ 8(vii) & Attachment 1. By letter dated February 20, L.A. VanNatta, the final reviewing authority for the DOC's Offender Grievance Program, informed Mr. Becker that his grievance wouldn't be "entertained at this level until such time as the report has followed the prescribed process." Becker Aff., Attachment 2. The materials Mr. Becker had previously submitted were returned to him "to be processed on the appropriate form through the correct channels." Becker Aff., ¶ 8(x) & Attachment 2. Mr. Becker says after reading Mr. VanNatta's response, he assumed his grievance "would never be answered." Becker Aff., ¶ 8(xii). ISP records show that the ISP grievance specialist's response was delivered to Mr. Becker on March 17, 2003 informing him that his grievance was rejected as untimely and he had two days to file an appeal. Clark Aff., ¶ 11 & Exh. E. ISP records further show that Mr. Becker didn't file an appeal of the denial of his Step 1 grievance. Clark Aff, ¶ 12.

Mr. Becker filed suit in the LaPorte Superior Court on June 30, 2004 pursuant to 42 U.S.C. § 1983 alleging that the actions and inactions of the defendants caused him to be injured in violation of his Eighth Amendment right to be free from cruel and unusual punishment. The defendants timely removed the action to this court, which has jurisdiction pursuant to 28 U.S.C. § 1343. Mr. Becker seeks injunctive relief, compensatory and punitive damages, attorney's fees, and costs. Mr. Becker, though, concedes in his summary judgment response

that his claim for injunctive relief, his claims against ISP and the DOC, and his official capacity claims against defendants Thatcher and Davis should be dismissed. Thus, the summary judgment motion will be viewed as addressing Mr. Becker's remaining claim that defendants Thatcher and Davis were deliberately indifferent.

*Exhaustion of Administrative Remedies*

The defendants first argue that Mr. Becker's claims are barred because he didn't exhaust his administrative remedies prior to filing suit. Mr. Becker responds that because the defendants first raised the defense of exhaustion of administrative remedies in their summary judgment motion, they are barred from amending the pleadings in that motion and their argument in this regard isn't properly before the court and doesn't support entry of summary judgment in their favor. In reply, the defendants note that they filed a motion to amend their answer (in conjunction with the filing of the fully-briefed summary judgment motion) to add an exhaustion of administrative remedies defense. The defendants claim Mr. Becker won't be prejudiced by allowing them to add the exhaustion defense because he was afforded an opportunity to address their arguments relating to that defense in his summary judgment response.

The Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

6

until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhausting administrative remedies requires a prisoner to follow the procedures of, and take all steps prescribed by, the prison's grievance system. Ford v. Johnson, 362 F.3d 395, 397 (7th Cir. 2004); *see also* Riccardo v. Rausch, 375 F.3d 521, 523-524 (7th Cir. 2004) ("Prisoners must follow state rules about the time and content of grievances. Failure to do this means failure to use (and thus to exhaust) available remedies.").

"A prisoner's failure to exhaust administrative remedies before filing [suit] constitutes an affirmative defense under Rule 8(c) of the Federal Rules of Civil Procedure." Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 1999). Rule 8(c) provides that a party asserting an affirmative defense has the burden of pleading that defense, and any defense not raised in an answer is deemed waived. *See* Castro v. Chicago Housing Auth., 360 F.3d 721, 735 (7th Cir. 2004) ("We have stated numerous times that if a defendant does not raise defenses at the time of filing an answer, those defenses are deemed waived."); Carr v. O'Leary, 167 F.3d 1123. 1126 (7th Cir. 1999) ("the failure to plead a defense in a timely fashion is a waiver"); Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 235 (7th Cir. 1991) ("Failure to plead an affirmative defense results in a waiver of that defense.").

The defendants answered Mr. Becker's complaint on October 14, 2004. Contemporaneous with the filing of the fully-briefed summary judgment motion on January 17, 2007, the defendants filed their motion for leave to file an amended answer to add a failure to exhaust defense. While Federal Rule of Civil

7

Procedure 15(a) permits such amendment "when justice so requires," the defendants' request for leave to file an amended answer was denied based on Magistrate Judge Nuechterlein's conclusion that the defendants "failed to offer a justification for their tardiness and because [Mr. Becker] will be prejudiced by the amended answer, justice would not be served by amending the answer at the eleventh hour." Ord. of Feb. 8, 2007, at 1-2. Accordingly, the defendants' request for judgment based on Mr. Becker's failure to exhaust administrative remedies must be denied.

*Deliberate Indifference*

Mr. Becker claims Superintendent Davis and Mr. Thatcher violated his Eighth Amendment right to be free from cruel and unusual punishment when they failed to take the necessary steps to protect him from an attack by other inmates. According to Mr. Becker, he told Mr. Thatcher and Superintendent Davis of an "imminent threat" to him by Ralph Page, he made it clear to Mr. Thatcher that he wanted "out of there," and Mr. Thatcher acknowledged that he would do what he could to "get the wheels moving" to transfer Mr. Becker. The day after his meeting with Mr. Thatcher, Mr. Becker was attacked; he says Mr. Thatcher and Superintendent Davis took no action to protect him, which amounted to deliberate indifference.

A prison official's deliberate indifference to "a substantial risk of serious harm to an inmate" violates the Eighth Amendment. Farmer v. Brennan, 511 U.S.

8

825, 828 (1994). Deliberate indifference is comparable to criminal recklessness and is shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992). The defendant "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994); *see also* Armstrong v. Squadrito, 152 F.3d 564, 577 (7th Cir. 1998) ("the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so"). This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." McGill v. Duckworth, 944 F.2d 344, 347 (7th Cir. 1991).

"It is not enough . . . that the [prison official] ought to have recognized the risk." Riccardo v. Rausch, 375 F.3d 521, 526 (7th Cir. 2004). The court must ask whether, before the actual occurrence, the risk that such injury would result was 'substantial' and whether the officials knew of the risk. Mr. Becker must present evidence that Mr. Thatcher and/or Superintendent Davis "actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless." Pierson v. Hartley, 391 F.3d 898, 902 (7th Cir. 2004); *see also* Johnson v. Snyder, 444 F.3d 579, 583 (7th Cir. 2006) ("To be personally responsible, an official must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye.").

9

The defendants argue that they weren't deliberately indifferent to a substantial risk of harm to Mr. Becker. They have offered the following explanation of the events on September 6, 2002 that led to the attack on Mr. Becker:

> Offenders Page and Tidwell were in the front recreation group . . . . [Mr. Becker] was in the back recreation group . . . . Pursuant to post orders and custom in the ASU, the front recreation group has recreation in a separate secured area from the rear group and the front group is not to enter the range until the rear group is secured in their cells, and vice versa.
> Corrections officers are uniformed custody staff members of DOC responsible for following post orders, guarding offenders, searching offenders for weapons, transporting offenders, and locking and unlocking their cells as appropriate.
> A range officer is a corrections officer responsible for guarding the prisoners as they enter and exit their cells. Officer Collins was the range officer on duty on September 6, 2002. Officer Collins was unable to lock the cell doors of Offenders Page and Isby upon their return from recreation, apparently due to some difficulty with the locks. As a result of Officer Collins' inability to lock the cell of Offenders Page and Isby, Offender Page was able to exit his cell and gain access to [Mr.] Becker when [Mr.] Becker's] recreation group entered the range on September 6, 2002.
> Range tenders are offenders who meet special criteria to be permitted on the range to assist corrections officers with range duties under the supervision of the range officers. Range officers receive a wage from DOC for working as range tenders. On September 6, 2002, the range tender assigned to [Mr.] Becker's range was Offender Johnson. For reasons unknown to [Mr. Thatcher], Offender Tidwell, who is not a range tender, was permitted by Sergeant Florer, a corrections officer, to assist Offender Johnson in his range tending duties. As a result of Offender Tidwell being permitted on the range, Offender Tidwell was able to gain access to [Mr.] Becker.

Thatcher Decl., ¶¶ 15-27; *see also* Deft. Stmt. of Material Facts, ¶¶ 17-28.

Mr. Thatcher contends there is no evidence to support a finding that he drew the inference that there was a substantial risk of harm to Mr. Becker. Mr.

Thatcher says he received Mr. Becker's request for an interview and met with him the following day to address his concerns about Ralph Page. Thatcher Decl., ¶¶ 8-9. Mr. Thatcher says Mr. Becker asked to be transferred to a different housing area at ISP, but because such a move wasn't possible, Mr. Thatcher offered to place Mr. Becker on key lock status in his cell. Thatcher Decl., ¶ 12. Mr. Becker declined that option. Thatcher Decl., ¶ 13. Mr. Thatcher says Mr. Becker didn't mention any problem or conflict he was having with Loren-Wayne Tidwell. Thatcher Decl., ¶¶ 11, 30.

Superintendent Davis maintains he "was not aware of any problems Offender Becker was having with Offenders Page or Tidwell until after the incident between them on September 6, 2002." Davis Aff., ¶ 5. Superintendent Davis says Mr. Becker's confinement in the Administrative Segregation Unit meant "he was already placed in a cell segregated from other offenders . . . in a highly controlled environment" away from any physical contact with Ralph Page and Loren-Wayne Tidwell, who were assigned to a recreation group different from Mr. Becker's group. Davis Aff., ¶¶ 6-7. Superintendent Davis claims that even if he knew of Mr. Becker's request for an interview, "the fact that one of his staff members (Mr. Thatcher) met with [Mr. Becker] and determined that [Mr. Becker] was not at serious risk of harm does not make [Superintendent] Davis liable for that decision." Mot., at 13. Superintendent Davis says he didn't believe Mr. Becker was in danger and argues that he should be able to rely on the conclusion of Mr.

11

Thatcher – an official who looked into the matter – that Mr. Becker was not in jeopardy of harm from offenders Page or Tidwell. Davis Aff., ¶ 8.

The defendants state that there were procedures in place to keep Mr. Becker separated from the risk of harm. Mr. Becker was in an area of ISP – the Administrative Segregation Unit – that restricted his movements and his contact with other inmates. Mr. Becker was assigned to a recreation group different from the group to which Mr. Page and Mr. Tidwell were assigned, and inmates assigned to those differing recreation groups weren't allowed to have contact with each other. The defendants say Mr. Becker came into contact with Messrs. Page and Tidwell only after a prison guard didn't secure Mr. Page's cell door properly – a cell located in an area different from Mr. Becker's – and another prison guard allowed Mr. Tidwell to accompany an inmate who was a range tender assigned to an area different from Mr. Becker's. The defendants insist there is no evidence that they caused or condoned those actions or that they were aware that there was a substantial risk of serious harm to Mr. Becker.

Mr. Becker hasn't explained how Mr. Thatcher or Superintendent Davis could have known about and prevented the events of September 6 – how either of them could have predicted, first, that certain cell doors in an area where Mr. Becker was not housed would malfunction, allowing an inmate not assigned to Mr. Becker's recreation group to enter Mr. Becker's area; second, that at that same time another inmate, also not assigned to Mr. Becker's recreation group, would be allowed to act as an assistant range tender in a recreation group different from

Mr. Becker's and gain access to Mr. Becker's area; and, third, that the two inmates described in those scenarios would come together to locate Mr. Becker and assault him. Mr. Becker says his assault was "reasonably preventable" and that Mr. Thatcher and Superintendent Davis "knew of and disregarded" the risks of his "impending assault," Resp., at 3-4, but those conclusory statements, without more, are insufficient to establish that Mr. Thatcher and/or Superintendent Davis knew about the events that led to the attack and facilitated, approved, condoned, or turned a blind eye to that conduct. Johnson v. Snyder, 444 F.3d 579, 583 (7th Cir. 2006); *see also* Doe v. Welborn, 110 F.3d 520, 273 (7th Cir. 1997) ("An allegation that prison officials exposed a prisoner to a 'risk of violence at the hands of other inmates,' does not implicate the Eighth Amendment's Cruel and Unusual Punishment Clause.").

Mr. Becker characterizes the response by Mr. Thatcher and Superintendent Davis to his complaint about Mr. Page as a "do-nothing" response. Mr. Becker, though, hasn't presented evidence to establish that Mr. Thatcher or Superintendent Davis had actual knowledge of "impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." Duane v. Lane, 959 F.2d 673, 676 (7th Cir. 1992) (*citing* Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1985)). Even assuming Superintendent Davis and Mr. Thatcher knew of a substantial risk to Mr. Becker's safety, they are free from liability "if they 'responded reasonably to the risk, even if the harm ultimately was not averted

13

because in that case it cannot be said that they were deliberately indifferent.' The 'mere failure of the prison official to choose the best course of action does not amount to a constitutional violation.'" Guzman v. Sheahan, __ F.3d __, __, 2007 WL 2241646, *4 (7th Cir. Aug. 7, 2007) (*quoting* Peate v. McCann, 294 F.3d 879, 882 (7th Cir. 2002)).

The uncontested facts show that the defendants responded reasonably: Superintendent Davis asked Mr. Thatcher to contact Mr. Becker about his request for an interview; Mr. Thatcher met with Mr. Becker, offered to put Mr. Becker on key lock status in his cell because an immediate relocation wasn't possible and Mr. Becker declined that request; Mr. Thatcher told Mr. Becker he would "get the wheels rolling" to get Mr. Becker moved to another area of ISP, but Mr. Becker was attacked before a transfer could be arranged. Mr. Becker declined the offer of remaining locked in his cell, and he hasn't presented evidence that would permit a jury to conclude that Superintendent Davis or Mr. Thatcher had actual knowledge or could have inferred that he would be attacked based on the combination of events that would occur as they did on September 6, 2002. Viewing the facts in the light most favorable to Mr. Becker, those facts don't support a finding of deliberate indifference by Superintendent Davis or Mr. Thatcher. The court need not address the defendants' alternative qualified immunity argument.

*Conclusion*

Based on the foregoing, the court GRANTS the defendants' summary judgment motion [docket # 34]. The clerk is directed to enter judgment accordingly.

SO ORDERED.

ENTERED:   September 12, 2007

      /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court